Mr. Colombo. Thank you. I'd like to save two minutes for rebuttal. If you have to keep track of your own time, help us do that, since the full time remains. May it please the Court, Anthony Colombo, on behalf of the appellant Murillo-Perez. The District Court erred in failing to grant the defendant's Rule 29 motion because there was insufficient evidence of alienage in this case. The only evidence that the government submitted and argued that proved that Mr. Murillo-Perez was an alien was an admission from a 1994 deportation proceeding. Under oath by your client? That was under oath at the deportation proceeding. Why wouldn't that in and of itself be sufficient? How much more credibility do we need than a sworn admission under oath against the interest of the party who declares it? Well, Your Honor, I think it's clear under United States v. Hernandez that when the primary evidence of citizenship offered by the government consists of the defendant's admissions, those admissions require independent corroboration. Could those cases all deal with admissions to arresting officers in the field? This is different. This is a sworn admission under oath before a judge. Well, Your Honor, I would then refer to both Meza-Sorio as well as Ortiz-Lopez, which held that the facts arriving at the deportation or the conclusion of the deportation, the underlying facts are not sufficient evidence of alienage. That's a slightly different question, I guess. You still haven't answered my question. Is there any case that says that a sworn admission under oath is insufficient? Because all the cases that I read involve unsworn admissions. Well, I think, Your Honor, that there is a case, Sotelo, where the post-arrest statements were made under oath. And the Sotelo court, which is a case that the government relies upon, it was found that there was corroboration because of the admissions that were made at the deportation proceeding in conjunction and in connection with the admissions that were later made post-arrest. In this case, I believe. So, in essence, he did the same admission twice in that case. That's correct. And that's distinguishable from the instant case, Your Honor, where we only have the 1994 admission. Well, after that, didn't he get some legal status in America and then lost it, and there was evidence that he lost it? Well, there was the deportation from that same proceeding. But that would be really bootstrapping the admission, because what Ortiz-Lopez says is that the deportation orders don't in and of themselves establish proof of alienation because of the clear and convincing evidentiary standard that is required for a deportation order, whereas in a criminal case such as this, the evidentiary standard is proof beyond a reasonable doubt. So, in this case, we have no sufficient evidence of alienation because we have... Okay. Finish your sentences. Because of the fact that there was just the evidence of that 1994 admission. Was that objected to? Was the... The 1994 admission? No, it was not objected to. And how was the sufficiency of the evidence, the argument that you're now making, raised to the... Well, I, at the close of the government's case, I made a motion for a judgment of acquittal pursuant to Federal Criminal Procedure Rule 29 on all elements and all counts, and I believe that the issue was that, or the issue now is that in denying that motion, that the evidence was not sufficient for alienation. And that is what I would rely upon. That's why it's a sufficiency of the evidence argument, because the government has the burden to prove all elements of the offense. And in this case, they failed to do that. And I would say that in other cases, there have been addition, in addition to the admission from a deportation proceeding or from an arrest, there were other corroborating circumstances, such as a further admission or the evidence surrounding the mode of entry, such as scaling a ladder across the border or being arrested right across the border or hiding in some brushes, or the apprehension and how that occurred. In this case, we have none of that. We have none of that corroborating evidence. So the evidence was insufficient. If there are no questions in that regard, I would move on to the second issue that I believe that is important, and that's whether the district court violated Mr. Murillo-Perez's Fifth and Sixth Amendment rights by allowing the admission of both written and testimonial evidence that Mr. Murillo-Perez was permanently barred from reapplying for permission to reenter the United States. Was that objected to at trial? Yes. I'm looking at page 151 of the transcript, and it says, yes, right here it is marked, at any time he may not reapply, right here. He is barred right here. And there is different time periods. For this defendant, it is any time he may not reapply. There's no objection to that. Well, I objected, and there's a difference of opinion as to the standard of review. The government believes it's plain error. I believe that is de novo because I filed the motion in limine, specifically objecting to this type of testimony that was denied. Did the judge say it was a final ruling on the motion in limine? Yes. He said that that would be denied, the defendant's motion in limine. Call the final ruling on it? Yes. And it would be the supplemental excerpt of record, page 169, where you would find that I filed that specific motion, and then those motions were then denied in the excerpt of record, page 50 to 51. So, I'm sorry, the end page 16, which I, again, objected to the documentary evidence of the I-296, which the agent Woody testified to. So I believe that my objection through the motion in limine and then further on to the I-296 is sufficient to establish it in overview. And is the basis of the objection hearsay? Well, the basis of my objection was that it would violate Mr. Murillo-Perez's Fifth and Sixth Amendment rights by allowing the testimonial evidence, allowing this AFILE custodian to basically testify as an expert. In regards to the actual ---- I'm not sure I understand the basis of the objection. Well, what happens at these 1326-type trials is the government will call an AFILE custodian, and they elicit from the AFILE custodian not just the foundation for the documents, the deportation documents, but they also elicit testimony concerning the actual procedures that were followed by the immigration judge and to what impact those procedures have. Why can't a qualifying employee of the service testify based on her personal knowledge as to how the immigration deportation procedures operate? If the government laid the sufficient foundation to establish that, I think they might be able to testify. I objected that this particular AFILE custodian who had the file for not a very long period of time does not have that sufficient procedure. Could you tell me again where that objection is? I'm sorry. It's the supplemental excerpt of the record, and it is my motions in limiting, and I believe it's on page 169 of the supplemental excerpt of the record. This Court should preclude the AFILE custodian from testifying? Yes. And basically for us that argument was that under the Fifth and Sixth Amendments, as a right to a fair trial and to allow the AFILE custodian to testify about immigration proceedings would violate these rights. And the testimony that came in that hurt you was what? Was concerning. Where is that? The testimony that was admitted was from Agent Woody concerning the I-296 form and the fact that Mr. Mario Perez was barred from life for reapplying for permission to reenter. And I believe that concerning that testimony, it's excerpt of record page 31 through 33. Let's stop there. Let me ask a question. First of all, the document is a public record, so it requires no foundation. It is admissible, assuming that there's a witness who can authenticate it as a public record, right? That's what she's doing. Well, I think it is a business record and it would have to establish under 8038. No, it's a public record under 8038. And our case law says that you don't have to lay a foundation for a public record. All you have to do is identify it for what it is. So you've got to authenticate it in that respect. Understood. All right. If it comes in as a public record, then the content of the document, it seems to me, is being admitted for purposes of establishing notice to your client that he was barred for life from reentering. And why can't the jury look at the content of an otherwise admissible public record to read it and see what it says? Well, the problem didn't occur with just the admission of the document, which doesn't specifically say that he is barred from life from reapplying for permission to enter. The problem is the introduction of the document and the explanation from Agent Woody, who under the guise of expert testimony is informing the document that the document says that he is barred from life for reapplying for permission to enter. But the jury can see that from reading the document. What I'm having a hard time understanding is what the objectionable basis is for the agent's testimony if the document standing alone is fully admissible and the jury can read what it says, which is essentially what the agent told them the document said. Well, I think you have now a compounding issue where you have this immigration custodian slash expert testifying to what her interpretation of the document is and explaining to the jury what the document is. So you don't think that the jury could read that document and see that it put the defendant on notice at the time of his prior deportation that he was barred for life from ever reentering? I don't think that the plain language of that document is so clear. As Agent Woody said, that he is barred from life for reapplying for permission to enter. I don't have that document. Can you read the language to me? What does it say? It's Exhibit 8A. I have a minute and a half left. Your counsel is graciously handing you a copy. You're over time. I would like to hear what that is. Go ahead. I think I'd allow the government to read it if that's going to be part of it. I just want to hear what the language says. Either you or her, I'm going to hear it. I'll leave that to the government. All right. Bye. Good morning, and may it please the Court. My name is Rebecca Cantor, and I represent the United States in this appeal. I guess I'll pick up where Mr. Colombo left off. In Exhibit 8A, which the Court can find in the Extradited Records, pages 55 through 56, the Court can see that the defendant has been found inadmissible to the United States under certain provisions. In accordance with the provisions of Section 212A9 of the Act, you are prohibited from entering, attempting to enter, or being in the United States, and then there's a series of boxes, and the box that's checked off reads, at any time with a bunch of white space. And the next paragraph says, after your deportation or removal has been effected, if you desire to re-enter the United States within the period during which you are barred, you must request and obtain permission from the Attorney General to reapply for admission. So that's the relevant language. And I actually want to take a moment to focus on the whited out part, because I think it's relevant. It goes to one of the questions you've asked, which was, was there an objection to this evidence coming in? And I maintain that there wasn't an objection. Defendant's only objection was, quote, based on the motions in limine. He made that objection at the time the government moved to admit this into evidence. And if you read the motions in limine carefully, and the actual objections contained therein to this document, there's a confrontation clause objection, which wasn't raised, isn't before you. There was a complaint that the jury should not be informed, as this document would have otherwise informed them, of the punishment, because punishment is not within the purview of the jury. And that was specifically redacted off the document in that white box area. In addition, the at any time has a bunch of white space, because at the defendant's, based on the defendant's objection and the party's agreement, what was redacted was the fact that it says at any time, because you've been convicted of an aggravated felony. Okay, so what was in this white box that's pointed out? The punishment, the 20 years to death match. Oh, okay, 20 years to death. And after at any time it said, because you've been convicted of an aggravated felony. So I think what that shows is that to the extent there was an objection to the document, it was properly redacted, then admitted without further objection, as to any of the other subsections. And I think it's also relevant that the offending testimony that the defendant complains about only came in on cross-examination, only came in in the redirect, based on the defendant's challenge that he was attempting to make to the integrity of the government's record keeping, essentially. As to the stepping back a moment, then, to the other issues, unless the court has questions on this issue, I'd like to move to the first issue counsel argued, which is the evidence on alienage. And on this point, there was, as Judge Holland pointed out, an admission under oath, and that's different from Hernandez in that it's not simply an admission to a lawyer official or someone in the field. It's an admission to a judge under oath. And that does make it unique. I think that under the law there is no case that requires there be any corroboration of that. But even if the court wants corroboration, that exists in this case. And I think the most important piece of corroboration, again, comes at defendant's cross-examination, which is that he specifically asked the 85 custodian, well, isn't it true that my client had an application, had legal status here in the United States? The only way someone gets lawful permanent resident or green card status is if they're not a citizen. So that really conclusively established that whatever permission he had or didn't have, he was not a citizen of the United States. He was an alien, and that element was proved beyond a reasonable doubt. And notwithstanding the fact that Mr. Colombo raised in his Rule 29 motion challenged the sufficiency of all the evidence on all the elements, I think if you read the closing argument and you look at what was actually at issue, you'll find that not once in his closing argument does he challenge the sufficiency of the government's evidence on alienage. The Rule 29 motion was just a blanket motion. Exactly. And if you look at the actual argument in closing, he didn't argue that there wasn't sufficient evidence of alienage. That's because there was. And I would like to just briefly visit the CNR issue. I know the courts heard lots of argument, and I submit my colleagues' statements with respect to the harmless error review. I would maintain those are all applicable in this case. So I just want to point out the evidence that's unique to my case that I do think meets the Orozco-Acosta standard, and that is that in this case you had Agent Woody's testimony, just like in the last case, interestingly. She was the same custodian, and she testified as to searching the A file, not finding an I-212 application for readmission, not finding a receipt showing that the application fee had been paid, and also her search of the claims database. And contrary to what Mr. Colombo argues in his opening brief, this was not narrower than the certificate of nonexistence. In fact, it was broader than the certificate of nonexistence because the CNR only pertains to the searching of the electronic databases. It does not speak to the actual physical A file. So Officer Woody actually was able to give a more comprehensive search by looking at the physical A file as well as the claims database. And in addition, the argument in the last case, there was an argument in the last case related to permutations of the search based on different names, aliases, and such. In this case, the actual CNR had all of those aliases and other birth states redacted out. That was actually to prevent any prejudicial effect to the defendant. The effect that it did have is that the jury wouldn't have known that the CNR pertained to anything other than a very simplistic, straightforward search of the name and A number at issue. So it doesn't suggest that it was broader to the jury at all than what they were able to hear on the witness stand from Officer Woody who, consistent with what Melendez-Diaz requires, and what Crawford requires, was subject to cross-examination and the jury still found her testimony credible. So if the court has no further issues, I'd ask the court affirm the conviction but also the sentence of 84 months as being reasonable. Any questions? Thank you, counsel. Are there any questions of the counsel? Thank you. Your time has expired and we have no further questions and so we'll order the case just argued. Submitted for decision. The next case for argument is United States v. Polchak.
judges: Jarvey, Schroeder, Tallman